UNITED STATE DISTRICT COURT
FOR THE DISTRICT COURT OF
ARIZONA

Ronald Jackson
    Petitioner,

v.

JT Shartle, warden
    Respondent.

NO. 4:17-CV-00526-TUC-JAS

FILED ___ LODGED ___
RECEIVED ___ COPY ___
JUN 4 2018
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
_____ DEPUTY

Traverse Reply to Response of §2241 Habeas

Ronald L. Jackson, filing pro-se, replies now to the response of JT. Shartle, warden to show the court that habeas relief must be issued due to the absolute violation of Constitutional rights and show onto the court the following:

## The History

The Bureau of Prisons, Tucson Penitentiary sanctioned Ronald L. Jackson illegally in 2016 via "Discipline Hearing Officer (DHO)" telephonic hearing for Possession of what they falsely claimed where amphetimines to 41 days of imprisonment (this by taking away 41 days of earned good time).

The exculpatory laboratory analysis (required) which showed that there was NO amount of ANY amphetimine in anyones possession was not used by this "DHO" the only "evidence" cited was a photograph of an unreliable false feild test, a "NIK" reaction test of a small peice of brown napkin soaked with coffee.

This 41 days of illegal imprisonment was administratively challenged. Despite that it was clear that Jackson directly challenged the use of the proven unreliable NIK test and not the actual lab analysis, the BOP (both Central and Regional) denials completely misconstrued and mischarecterized the issue and instead of actually addressing the evidence (as challenged) and defending their false claim, they

simply made conclusory statements vs. actually supported by the evidence... Your Due Process rights were upheld... the action, filed in Oct 2017, was "responded" to by Respondent Shartle on the last day of February. That responce was also conclusory and without a bit of merit, because it also (like the administrative response), does misconstrue, mischarecterize and misrepresent the issue. this reply must then reinforce those issues - which are as follows:

A - The NIK field test is unreliable and because it cannot define actual substance or amount does not comport with the constitutional strictures required by the Administrative Procedures Act (APA) which requires proper notice, thus the (41 days) prison sentence is illegal.

B - The actual laboratory analysis was withheld from the defendant. which violates Due Process (5th Amend) and the "DHO" therefore is a Brady violation, thus the instant (41 days) prison sentence is illegal (8th Amend) (violates APA) and 24hr notice must inc. this exculpatory evidence.

C - The notice requirement of the 5th Amendment requires that drug amounts (both even quality ) must be properly and factually alleged. Because NO amount was ever alleged, no Due Process notice was given therefore there is no jurisdiction for any person to sentence someone to prison. (violates APA)

D - Federal Jurisdiction of ANY drug offense, no exception is made in any statute for administrative determinations, requires a specific threshold, DHO w/o jurisdiction. ZERO, as an amount can not qualify for a federal prison sentence. NO jurisdiction by any statute or regulation any where reaches to zero. The BOP, and every Fed agency, was w/o jurisdiction to impose a prison sent. for ZERO (violates APA)

## Legal Discussion

1 - The respondent, through the Asst US Attorney Strange rightly points out that "Due Process applies to prison... hearings" (citing Wolff v. McDonnell 418 US 539, 557/ 1974). That is about the only thing the respondent, utilizing the unlimited resources of the entire DOJ if necessary, got right. As the completely unrepresented, pro-se, Jackson alleged, Due Process was, in fact, violated by DHOs reliance on only the NIK field test and refusal to consider the actual exculpatory lab analysis (or even provide Jackson with that notice - of final lab analysis). Therefore, the Due Process notice requirement that Wolff requires and even US Atty Strange acknowledges in her 'response' (pg 7, Line 3, doc #11) could not / was not met (24hr advance notice of the charges against him)

2 - "Notice", as defined by every fair jurisdiction in the land, requires FACTUAL allegations, specifically a statement of the essential FACTS that support the allegation.

3 - The Administrative Procedures Act (APA - 5 USC § 551 et seq) protects against (exactly these kind of) administrative actions of any government agency from tyranny of violating constitutionally guaranteed protections "All state action shall be consistent with the fundamentals of justice" Herbert v. Louisiana (1926) 272 US 312, 47 S.Ct 1103

4 - "All administrative acts (inside prison or not) must afford substantive due process" Wilwarding v. Swanson 502 F2d 844 (8th Cir 1974) and the BOP is NOT somehow immune to constitutional / strictures or the APA Berg v. Obama 574 F Supp 2d 509, 519 (EDPA 2008); Simmot v. USBOP 413 F3d 1225, 1239 (10th Cir 2009) and "The Bureau of Prisons is subject to the APA" US v Savage 521 F3d 792, 794 (7th Cir 2008); Kerchner v. Obama 586 F3d 234 (3rd Cir 2009) and "There's no iron curtain drawn between the constitution and prisoners in this country" Wolff v. McDonnell 418 US 539, 555-56 (1974)

5 - This court has an obligation, a duty under the law to intervene to correct an individuals rights from being violated by the government (that is, in fact, the entire purpose of courts) "Courts must not shrink from their obligation to enforce the constitutional rights of All persons INCLUDING prisoners... the courts must not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration" Brown v Plata 131 S.Ct 1910, 1928-29 (2011)

6 - The Administrative Procedures Act, to which the BOP is not immune, is enacted to ensure due process in administrative decisions and to guarantee that the same constitutional rights are extended to administrative decisions as required in and set forth in courts of law.

<u>The field test is not sufficient</u>

7 - Because proper notice requires a factual summary of what a person is accused of, the mentioning of a field test in a government workers unsworn assertion is NOT the constitutionally required notice to which any defense could be prepared.

The field test (NIK test) has been debunked as a reliable source of evidence, is insufficient as evidence and is insufficient as notice. (Percy Love 18616-097, incident report # 2889398, Administrative Remedy No. 879626-R1) "case expunged due to exculpatory evidence" (April, 19 2017).

Moreover, the notice given to Mr. Jackson (Pre-DHO hearing) did NOT include examination of either the NIK test OR even the very same photograph of the NIK the DHO admits was relied on. The ONLY notice given was a copy of the incident report which makes an unsworn claim that such an (unreliable) NIK was done (doc #11, pg 26), thus is insufficient as notice.

8- Why is a conclusory reference to the NIK in the incident report not sufficient as notice?

Simple. The APA ensures that the same protection and requirements of a court are extended to administrative decisions. And in the instant case, even IF the NIK was not a long-debunked unreliable method (although it IS debunked and is not reliable) it does not factually determine what is constitutionally required in drug cases.

The "Due Process clause prohibits the state from using evidentiary presumptions" Yates v. Aiken (1988) 484 US 211, 98 L.Ed2d 546, 108 S.Ct 534; US v Elwood 999 F2d 817-18 (5th Cir 1993) Reliance on reactive field test (false-positive or not) is "using evidentiary presumptions" which is prohibited (Yates, Elwood supra)

9- Especially in a drug case: Drug amounts, for example, must be factually specified in the allegation itself. This is long established in Apprendi v. New Jersey 530 US @ 494 n.19 and affirmed by Alleyne v. US 133 S.Ct @ 2156, 2160-63 by the US Supreme Court.

There is absolutely no doubt, and it is incontrovertible that drug amount must be factually defined in the charging document (which in this administrative case is the incident report) to be legally valid. If NO specific amount is alleged, then NO specific amount could be found (by DHO), thus there is no jurisdiction to render a prison sentence (41 days). Because drug amount was required, it is illegal (even administratively) to render a sentence based on a NIK, since the NIK cannot/does not/did not determine either quality (legally required) or quantity (legally required). The NIK is simply not designed for that.

The NIK is essentially designed to say, "This warrants further investigation" or not. It is the equivalent of a "drug dog" sitting down when it sniffs an airport suitcase. One cannot legally be sentenced to a drug sentence simply because of and based entirely on an unsworn assertion that a dog sat. Such a sentence would be absurd, invalid, and illegal.

10- Speculation can NOT take the place of "specific evidence required to calculate drug quantities for sentencing" US v Shonubi / Shonubi II 998 F2d @ 89 and "failure to properly (factually) allege an element of an offense (such as Apprendi required drug amount) constitutes jurisdictional error that renders any sentence relying on the alleged element invalid" Debenedictis v. Wainwright 674 F2d 841 (11th Cir 1982) and for a sentence to be valid "An explicit finding of drug amount is required" US v. Patterson 2017 BL 328 137, No 16-2119 (7th Cir 2017) Not even an Article III judge can legally render a federal prison sentence (not 41 days or even one day) without an explicit finding of drug amount. Does Ms. Strange now suddenly suggest that a prison guard ("DHO officer") who has no legal-bona-fides at all, somehow wields more power than a confirmed federal judge? If so then Ms. Strange creates a constitutional crisis, immediately appealable. If allowed, then this court does the same. In the instant case, drug amount is not only speculative, but is entirely non existant. This would be the first court in history to allow a prison sentence for a drug offense that has absolutely NO (zero amount) drugs.

11- This is why the Strange responce is baffling. (Pg. 7, line 21) of the Strange response claims "Petitioner does not allege the DHO hearing deprived him... procedural protections set forth in Wolff." Absolutely contrary to what is explicitly stated. All she had to do was read. Since the first test of Wolff specifically deals with the constitutionally required notice (as does the APA required it), and every single document (both court and administrative filings) challenge the reliance on the NIK test and the withholding of the actual lab analysis (which prove the NIK reaction was a false positive showing there was NO amphetamines).
So, the Strange responce claim (pg 7, line 23-24) that "Petitioner" received notice is is simply false. Notice requires facts; facts and evidence that can be challenged. A conclusory statement (unsworn) does not take the place of the exculpatory lab analysis.

12- Strange's responce (pg. 8-Section C) seems to replace the standard of "Some evidence" with no evidence. Even if one uses the lesser standard of (cited) Superintendent v. Hill and Norwood v. Vance. "evidence in the record" (Norwood) does not allow for zero evidence. And the actual evidence in the record shows an exact amount of zero amphetamines (by any measurement) in the record, in fact, an amount was never even alleged.

13- This is how the Strange response mischaracterizes the entire issue. Even though it is a (evidentiary) problem in the DHO decision to sentence prison time for non existent drugs, the first constitutional violation happened LONG BEFORE the DHO decision. The APA / Wolff / Constitutional requirement of notice was violated by:

a- Presenting only a conclusory (no subj) claim of a NIK test as "factual" "specific conduct" (Shonubi). Apprendi fact. This akin to misleading a grand jury.

b- Withholding the actual lab analysis (exculpatory) from Jackson, and the DHO. This obviously should have been part of the required notice. ("to present documentary evidence" Wolff #3). This is akin to a Brady violation.

Furthermore the court must recognize it is impossible to present 'documentary evidence' (Wolff #3) via telephone!

14- Because the DHO was never presented with the BoP's laboratory analysis which showed there was NO amphetamines, that DHO could not have been impartial. A mediator who cannot rely on actual evidence can not fairly judge or weigh it. Since the DHO admitted reliance entirely on the incident report itself (& its 'supporting' picture of the NIK), it could not / did not consider the actual exculpatory lab report that the BoP hid. Therefore #5 of Wolff (an impartial fact-finder) was also denied. One cannot 'find' facts never presented. Therefore, the strange statement (pg.8, line 1) that "Petitioner recieved... procedural protections" rings hollow. The (cited) Wolff test is not met.

15- Because possession of drugs, by any reasonable interpretation, requires some amount that was possessed - the decision itself is flawed and the sentence illegal and must be reversed. To claim that an amount of ZERO (which is why no amount was alleged) is the same as an actual amount is to claim someone CAN be in possession of ZERO. In the most literal sense to be in possession of an amount of ZERO is to be in possession of nothing.

16- To sentence or allow a prison sentence for an amount of a hypothetical drug amount "call into question... fairness and integrity" US v. Patterson 2017 BL 328137, 7th Cir No.16-2119 (9-18-17) but to sentence or allow a prison sentence for a amount of ZERO is egregious and shows fairness was somewhere lost. (again, implicating Wolff #1, #2, #3, & #4).

17- A vague charging document one that lacks factual assertions, fails to properly (legally) give notice; the incident report (as notice) is not/cannot be an exception to this. It is insufficient. US v. Hillie 2017 US Dist LEXIS 1390 (DC 2017); Van Liew v. US 321 F2d 664, 669 (5th Cir 1963); US v Nance 533 F2d @ 701 (DCAPP 1976); US v. Cruikshank 92 US 542, 558 23 L.Ed 588 (1876); Apprendi v. New Jersey 530 US 494 n.19; Alleyne v. US 133 S.Ct @ 2160-63 (2013); US v. Rogers 228 F3d 1318, 1327; US v. Cotton 261 F3d 397 (2001) US App LEXIS 18152 (4th cir 2001); US v. Gaxton 74 F3d 545, 552 (5th Cir 1992); US v. Deitsch 20 F3d 139, 145 (5th cir 1993); US v. Chaney 964 F2d 437, 446 (5th Cir 1992) and Russel v. US 369 US 749, 763-64, 82 S.Ct 1038, 8 L.Ed 2d 240 (1962)

18- The DHOs claims in the DHO report "suddenly adding the claims of "Possession of alcohol" Strange claims in her response must be some sort of clerical error while this is a bizarre clerical error to make. Strange seems to assert that such an error is harmless. Even if that claim is harmless, as Strange seems to assert, it DOES exemplify that there was no attempt at a measured, fair process. A fair minded Jurist would know that such blatant inattention demonstrates a proclivity toward automatic and pro-forma denials, a common technique - but showing a pattern of unfairness.

19- Finally, because nowhere in ANY response at any level of either administrative or court response does the government (respondent) actually confirm ANY amount whatsoever of ANY amphetamines in Jackson's Possession (which he denied from the beginning), therefore the Respondents have no entirely waived and forfeited this challenge. It must no be noted by the court that it can only consider and amount of ZERO in its decision. ZERO, as evidence. ZERO as notice means that there was NO amphetamines at all and the court cannot somehow stretch now to make this instant amount (of nothing) suddenly jurisdictionally sufficient for a prison sentence which, by any reasonable standard requires something - specifically something that fits the element of the offense; both in evidence and in notice. In the instant case, the notice and the evidence is entirely and actually non-existent. If this court decides to make this unreasonable stretch, then it does so for the sole purpose of trying to find a way to not oppose the government, precisely the tyranny the courts are designed to protect against - and in so doing, this court (qualifying nothing as a something) would open the floodgates of accusations by prison officials that never need to be properly alleged or proven. Such an event, from a district court, would seem to completely overturn Wolff and other precedent - a dangerous move for a federal district that houses a federal prison. Allowing this (41 days) sentence to stand gives the BOP a blank check to violate that which these courts are sworn to protect.

The Strange response is wholly without merit and the court must order the BOP to reverse its adverse administrative action against Mr. Jackson.

## Summary

- Because the amount (zero) was waived by the government, there was no administrative jurisdiction to 'try' Jackson for the non-existent amount.

- Because the NIK test is unable to actually determine either type or amount of drug, it is illegal to sentence Jackson for any amount (required) of any drug and insufficient as 'notice'.

- Because the 5th Amendment Notice requirement was not met, the Constitution, the APA and and supreme court Precedent require reversal of the adverse administrative action.

- Because the actual lab analysis, which showed there was no amphetamines, was withheld from from Jackson, it is akin to a *Brady* violation, reversal is required.

- Because that exculpatory lab analysis was never presented to DHO, DHO could not have been fair & impartial. (Wolff #5)

- Because an unestablished amount of drugs can NOT qualify a defendant for a drug sentence in law, no exception can be made for an administrative proceeding. To allow this sentence to stand is to give more power to a prison guard then an Article III judge, an instantly appealable new constitutional issue.

   Because of all the above the BOP never had administrative jurisdiction (per APA) for either the adverse action (sentence) or even hearing for the adverse action since such jurisdiction was lost at the notice stage. Likewise the same jurisdictional issues extend to the hearing and sentencing. None of it was according to the Constitutional strictures (enforced by percedent and the APA) and must be reversed. I so move the court.


Respectfully Submitted

*Ronald L Jackson*

Ronald L. Jackson
05/24/18